# PELTON GRAHAM LLC

ADVOCATES FOR JUSTICE

October 5, 2021

Taylor B. Graham, Esq.
Graham@PeltonGraham.com

**VIA ECF**

Hon. Vera M. Scanlon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re: *Montoya v. Vinny's of Carroll Gardens Restaurant & Luncheonett, Inc., et al.*
            **No. 20-cv-01904 (MKB)(VMS)**

Dear Judge Scanlon:

      This office represents named plaintiff Camilo Montoya ("Montoya" or "Plaintiff"). We write, jointly with counsel for Vinny's of Carroll Gardens Restaurant & Luncheonett, Inc. and Vincenzo Cataldo (collectively, "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and the Court's September 2, 2021 Order. Counsel for the parties respectfully submit that the negotiated Settlement Agreement (attached as **Exhibit A** to the Affidavit of Taylor B. Graham, Esq.) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.    Procedural History and Settlement Negotiations**

      Plaintiff commenced this action by filing his Class & Collective Action Complaint in the Eastern District of New York ("EDNY") on April 24, 2020. (Dkt. No. 1 (the "Complaint")). Defendants filed their Answer to the Complaint on June 30, 2020, denying all material allegations. (Dkt. No.7).

      Pursuant to the Initial Conference Scheduling Order (Dkt. No. 8), on August 11, 2020, Plaintiff's counsel served Defendants' counsel with Plaintiff's Rule 26(a)(1) initial disclosures, including an initial document production and damages computation spreadsheet with settlement demand. At the August 19, 2020 initial conference, Judge Scanlon entered a scheduling order providing a May 7, 2021 close of discovery date and ordered Defendants to respond substantively to Plaintiff's settlement demand by September 9, 2020. (Order of the Court dated. Aug. 19, 2020). Defendants were granted an extension until October 1, 2020 to respond to Plaintiff's demand. (Order of the Court dated Sept. 10, 2020). Despite the Order and extension, Defendants did not respond substantively to Plaintiff's demand. (*See* Dkt. No. 12). At Plaintiff's request, Judge Scanlon held a status conference on November 19, 2020 to discuss, *inter alia*, the parties' settlement negotiations and discovery obligations. (Order of the Court dated Nov. 9, 2020).

Magistrate Judge Vera M. Scanlon
FLSA Settlement Fairness Letter
Page **2** of **6**

On November 18, 2020, Plaintiff served interrogatories and requests for the production of documents upon Defendants. After more than three (3) months of no response from Defendants, Plaintiff's counsel once again requested a conference with the Court to obtain a response from Defendants. (Dkt. No. 13). Despite Plaintiff's initial intention to move for conditional certification of an FLSA collective action and notice to potential plaintiffs, in order to streamline the proceedings and focus on resolving Plaintiff's individual claims, Plaintiff chose to forego his anticipated collective action motion. (Graham Aff. ¶ 9).

On April 15, 2021, the parties filed a joint status letter indicating that Defendants still had not responded to Plaintiff's discovery demands and requesting referral to the EDNY Mediation Program. (Dkt. No. 14). Following a status conference held on April 21, 2021, the Court referred this matter to mediation and extended the discovery deadline to July 30, 3021. (Order of the Court dated Apr. 21, 2021). Due to scheduling conflicts, the parties were unable to schedule the mediation to take place until July 27, 2021, and therefore requested an extension of the discovery deadline. (Dkt. No. 15). The Court granted the parties' request (Order of the Court Ddated June 10, 2021).

The parties participated in a mediation session before Ira Cure, Esq. on July 27, 2021. (Graham Aff. ¶ 11). After a full day of negotiations, the parties ultimately reached a settlement in principle at that time. (*Id.* ¶ 11). Over the next several weeks, the parties finalized the terms of the settlement and drafted and executed the Settlement Agreement attached as **Exhibit A**. The Settlement Agreement as well as the mediation proceedings have been translated into Spanish for Plaintiff Montoya by Belinda Herazo, whose Declaration detailing her translation work is attached as **Exhibit B**.

## II.   The Settlement Accounts for Litigation Risk

Throughout the litigation, the parties have disputed several issues of fact concerning Plaintiff's employment with Defendants. Specifically, while Plaintiff alleged that until December 2017, he worked seven (7) days per week, shifts of approximately fourteen (14) hours per day, for a total of approximately ninety-eight (98) hours per week, Defendants strongly dispute that Plaintiff worked those hours since the restaurant was only open eleven (11) hours Monday through Saturday and nine (9) hours on Sundays. Plaintiff also alleged that from December 2017 until the end of his employment, he worked six (6) days per week, for a total of between forty-eight (48) and fifty-one (51) hours per week. For his work, throughout his employment with Defendants, Plaintiff alleges that he was paid a fixed weekly salary in cash, initially in the amount $480, which was raised to $500 in December 2017, then to $550 in January 2018 and finally to $600 in June 2018, such that Plaintiff's wages were below minimum wage for all hours worked and did not include overtime premiums or spread of hours premiums. Defendants assert that Plaintiff was at all times paid at least minimum wage and received overtime on the rare occasions that he worked more than forty (40) hours in a week. While Defendants did not provide any records or discovery responses in support of their position, they alleged that Defendants' other employees and managers

would testify as to the average hours worked by Plaintiff which would demonstrate that Plaintiff's allegations were inaccurate.

Defendants also maintain that Vinny's of Carroll Gardens is a small, family-owned restaurant whose business was severely impacted by the Covid-19 pandemic, such that Defendants could not afford to pay the amount allegedly owed to Plaintiff. While Plaintiff believes that a factfinder would credit his testimony over Defendants, Plaintiff recognizes the risk he would face at trial as well as the potential difficulty in recovering a judgment.

As mentioned above, in connection with Plaintiff's initial disclosures, Plaintiff created a damages analysis based upon his best recollection of his hours worked and wages paid. In total, Plaintiff's damages analysis calculated $93,917.97 in unpaid minimum wage, $58,945.44 in unpaid overtime, and $12,455.52 in unpaid spread of hours premiums, plus an equal amount in liquidated damages ($165,318.93), $10,000.00 in wage notice and wage statement statutory damages, and $49,669.76 prejudgment interest on the NYLL unpaid wages, for a grand total of $390,337.61. (Graham Aff. ¶ 12). Although there is a possibility that Plaintiff could recover higher damages if the case proceeded to trial, there is also the possibility that he would receive much lower damages, or nothing at all. Accordingly, with the assistance of experienced employment law mediator, Ira Cure, Esq., the parties were able to reach an agreement through arm's length discussions which would ensure that Plaintiff receives guaranteed compensation for his claims.

The parties believe that the settlement amount (i.e., $105,000.00) is a fair recovery based on the risks associated with establishing Defendants' liability and the calculated damages as well as the risks associated with proceeding to trial, as it represents approximately 63% of Plaintiff's "actual" unpaid wage damages.

### III.   Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $105,000.00 (the "Settlement Amount"). Of the Settlement Amount, $35,567.86 is payable to Plaintiff's counsel (consisting of $851.80 in expense reimbursement and $34,716.06 in attorneys' fees). The remaining $69,432.14 is payable directly to Plaintiff (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiff signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The agreement includes a mutual non-disparagement provision between Plaintiff and Defendants. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that

information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds Plaintiff and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiff's rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

The mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain reasonable attorneys' fees in the event that they prevail.

### IV. Plaintiff's Attorney's Fees and Expenses

As set forth in the Affidavit of Taylor B. Graham, Esq., as of October 5, 2021, Plaintiff's counsel has spent more than 110 hours in prosecuting and settling this matter, resulting in a lodestar of $29,432.99. *See* Graham Aff. Ex. C. Plaintiff's counsel has spent $851.80 in actual litigation

costs. *Id.* at Ex. D. The portion of the settlement amount that Plaintiff's seek as attorneys' fees (i.e., $34,716.06) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, and represents a modest 1.18 multiplier of the lodestar amount and is consistent with what was agreed upon between the Plaintiff and his counsel in his retainer agreement. *See* Ex. E.

The hourly billing rates utilized by Plaintiff's counsel in calculating the lodestar have been routinely approved in the EDNY, recently in connection with a wage and hour default judgment, *Guinea v. Garrido Food Corp.*, No. 19-cv-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."), as well as in connection with individual and class settlement approval. *See, e.g., Pucciarelli v. Lakeview Cars, Inc.*, No. 16-cv-4751 (RRM), 2017 U.S. Dist. LEXIS 98641, at *4-5 (E.D.N.Y. June 23, 2017) (approving similar rates from 2017); *Hall v. ProSource Techs., LLC*, No. 14-cv-2502 (SIL), 2016 U.S. Dist. LEXIS 53791, at *37 (E.D.N.Y. Apr. 11, 2016) (approving similar rates from 2016).

Accordingly, Plaintiff's counsel submits that the attorney's fees component of the settlement is fair and reasonable.

**V.     The Parties Believe that the Settlement Is Fair and Reasonable**

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length

negotiations, including a mediation session before a neutral third-party and extended settlement discussions that took place over the course of nearly twelve (12) months. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiff, including disputed merits issues and Defendants' potential inability to pay a larger judgment. Due to disputed issues of fact, the parties would likely need to engage in further formal discovery including depositions, as well as motion practice including summary judgment, which would consume a tremendous amount of time and resources. Rather than move forward with lengthy and costly litigation, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

*   *   *   *   *

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiff and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

| | |
|---|---|
| By: */s Taylor B. Graham* | By: */s David H. Perlman* |
| Brent E. Pelton, Esq. | David H. Perlman, Esq. |
| Taylor B. Graham, Esq. | **DAVID H. PERLMAN, ATTORNEY AT LAW** |
| **PELTON GRAHAM LLC** | |
| 111 Broadway, Suite 1503 | 186 Montague Street, 4th Floor |
| New York, New York 10006 | Brooklyn, New York 11201 |
| | |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

Enclosure